**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **MARIA GARCIA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:11-CV-0502-N-BK** |
| | § | |
| **GARLAND INDEPENDENT SCHOOL** | § | |
| **DISTRICT,** | § | |
| | § | |
| **Defendant.** | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to *Special Order 3*, this case has been referred to the undersigned for pretrial management.  The Court now considers Defendant's motions to dismiss (Docs. 17, 20).  After reviewing the motions, responsive pleadings, and applicable law, the Court recommends that Defendant's *Motion to Dismiss*, filed June 27, 2011 (Doc. 20), be GRANTED, in part.  In light of the foregoing, it is further recommended that Defendant's *Motion to Dismiss,* filed May 23, 2011 (Doc. 17), be terminated as moot.

## I. BACKGROUND

On March 10, 2011, *pro se* Plaintiff, Maria Garcia, filed her complaint against Defendant, Garland Independent School District.  (Doc. 1).  On May 23, 2011, Defendant filed its first motion to dismiss (Doc. 17).  On June 13, 2011, Plaintiff filed a response to the motion to dismiss and an *Amended Complaint* alleging national origin discrimination, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (Title VII), and 42 U.S.C. § 1981.  (Docs. 18, 19).

1

Subsequently, on June 27, 2011, Defendant filed its second motion to dismiss pursuant to FED. R. CIV. P.12(b)(6) and supporting brief.  (Doc. 20).  On July 29, 2011, Plaintiff sent correspondence to the Court delineating her "MAJOR 6 POINTS."  (Doc. 21).  Upon review, the Court liberally construes this last document as Plaintiff's response to Defendant's second motion to dismiss.  *See Haines v. Kerner*,  404 U.S. 519, 520 (1972) (*pro se* pleadings are held to less stringent standards than those drafted by lawyers).

Plaintiff alleges in her *Amended Complaint* that she is a Hispanic female who was employed by Defendant as a food prep worker from March 2008 to November 22, 2010.  (Doc. 18 at 3, 7-8).  In May 2009, Plaintiff transferred to Lakeview High School due to harassment by co-workers at South Garland High School.  *Id*. at 3.  Plaintiff claims that shortly after she arrived at Lakeview, "a black coworkers [sic] began to ridicule, harass and intimidate [her] by making fun of her Spanish accent; by laughing at her; by telling Plaintiff what to do and complaining to the supervisor if she did not comply and making false reports about Plaintiff to Plaintiff's supervisor."  *Id*. at 4.  Plaintiff further alleges that, "other white and/or black coworkers in the cafeteria joined in making fun of Plaintiff's accent referring to her as 'crybaby,' and 'hot hoe' and said she was dumb."  *Id*.

According to Plaintiff, when she complained to her supervisor, Patricia Henderson, about her co-workers' harassment of her, "[Henderson] always sided with the coworkers telling Plaintiff that she was to do what ever anyone told her to do and to keep quiet and to follow her rules or quit."  *Id*. at 4-5.  In addition, Henderson, "frequently shouted at Plaintiff and humiliated her in front of her coworkers."  *Id*. at 5.  Furthermore, during the time Plaintiff worked at Lakeview "at least three other Hispanic females . . . who worked under the supervision of

2

Patricia Henderson, also complained that [Henderson] showed favoritism to non-Hispanic employees, treated Hispanic employees harshly, shouted at them, made them work harder performing work others did not want to do; harassing them about speaking Spanish, demeaning and humiliating them . . . and by threatening them with their job if they complained." *Id* at 4. Plaintiff further avers that "several Hispanic females quit or were forced to quit due to the harassment and differential treatment." *Id*.

In March or April 2010, Henderson moved Plaintiff "into a position that a black male coworker refused to perform or could not perform." *Id* at 5. Plaintiff "agreed to perform the position," "in the spirit of cooperation," but when Plaintiff subsequently requested "to be moved from a position her requests were denied." *Id*. Around this same time, Plaintiff "complained about the harassment by coworkers and of the differential treatment by Patricia Henderson" to Jim Ross, Defendant's Director of Human Resources, and he advised Plaintiff to "ignore the comments" and "promised to get her help." *Id*.

All of this caused Plaintiff to suffer "extreme physical and mental stress which made her workplace hostile to the extent she could not reasonably perform her normal duties and she requested a transfer to another school." *Id*. During the summer recess, Plaintiff requested a transfer because "she knew the harassment would continue and she would not work under Henderson." *Id*. However, when summer ended, Plaintiff returned to the same position at Lakeview, where she claims the harassment and discrimination continued. *Id*. at 6. During this period, "Plaintiff observed that two black coworkers and a white coworker would sit in Patricia Henderson's office and eat, while all the Hispanic coworkers were made to work and were disciplined if they [ate] in unauthorized areas." *Id*. Once again, Plaintiff called and reported this

3

discrimination to Jim Ross. *Id*.

On November 12, 2010, an "Asian" co-worker, Mark, "who was a[n] acting cashier . . . asked Plaintiff to go get the key so he could shut the cafeteria window." *Id*.  Plaintiff responded that she could not "because she was too busy." *Id*.  Minutes later Henderson asked Plaintiff why she did not get the keys for her co-worker. *Id*.  Henderson told Plaintiff that "if [Plaintiff] was not going to obey her coworkers she should clock out and leave." *Id*.  Plaintiff clocked out 30 minutes early and called Matthew, an assistant in the human resources department, and complained of "the harassment and discrimination against her by Henderson." *Id*.  Matthew stated that "he would investigate her complaint and directed Plaintiff not to report back to work until further notice." *Id*. at 6-7.

Later that day, Plaintiff "went to the HR office and spoke with Jim Ross to discuss her complaint and find out if she was going to get paid for the time she was off the clock." *Id*. at 7. According to Plaintiff, Ross told her he would attempt to find another position for her and that "she should not worry about using [her personal days] without losing pay because he had a way through which she could get paid." *Id*.  On November 13, Plaintiff called Ross "to confirm that he was going to pay her the days she lost." *Id*.  Ross's secretary called Plaintiff back and stated that "Plaintiff would be paid for the days she lost without Plaintiff having to use her personal days." *Id*.

Plaintiff further alleges that on November 19, 2010, Ross "advised her that he had found a job at Rowlett High School otherwise she would have to stay at Lakeview." *Id*.  Plaintiff turned down the transfer because it was too far to travel. *Id*.  Ross then instructed Plaintiff "to report to work at Lakeview on November 22, 2010 at 7:00 a.m.," and stated that "Plaintiff would

receive a warning." *Id*.  On November 22, Plaintiff showed up for work at around 9:00 a.m., and

Henderson gave her a written warning, which Plaintiff signed despite her disagreement with the

content. *Id*. at 7-8.   However, Plaintiff refused "to sign a statement wherein she was agreeing to

use her personal days in order to be paid for the five days she lost." *Id*. at 8.  Plaintiff was then

taken to "Matthew's office" and was informed "that she was no longer employed by GISD

because she had refused the transfer to Rowlett." *Id*.  Plaintiff then discussed the matter with Jim

Ross who she claims "denied that he had promised to pay her for the days lost" and then decided

to fire her "because she refused to use her personal time." *Id*.

On November 30, 2010, Plaintiff timely filed a charge with the Equal Employment

Opportunity Commission (EEOC) alleging unlawful discrimination on the basis of her "National,

Origin, Hispanic," and retaliation. *Id*. at 8-9.  Plaintiff received her "Notice of Right to Sue"

letter on May 1, 2010, and subsequently filed this action alleging Defendant's reasoning for her

termination is pretext to cover unlawful discrimination. *Id*. at 9.

## II. APPLICABLE LAW

Motions to dismiss under Federal Rule of Civil Procedure Rule 12(b)(6) are disfavored

and rarely granted. *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981).  However, a complaint

must be dismissed pursuant to Rule 12(b)(6) if it fails to state a claim upon which relief may be

granted.  Under the 12(b)(6) standard, a court cannot look beyond the pleadings. *Spivey v.

Robertson*, 197 F.3d 772, 774 (5th Cir.1999).  When considering a motion to dismiss, the court

accepts as true all well-pleaded facts and views those facts in a light most favorable to the

plaintiff. *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995).  Dismissal is

required when a complaint fails to plead "enough facts to state a claim to relief that is plausible

on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged.  *Ashcroft v. Iqbal*, 129 S.Ct.

1937, 1949 (2009) (citations omitted).

A plaintiff's complaint should "contain either direct allegations on every material point

necessary to sustain a recovery … or contain allegations from which an inference may fairly be

drawn that evidence on these material points will be introduced at trial."  *Campbell*, 43 F.3d at

975.  Moreover, the complaint should not simply contain conclusory allegations, but must be

pled with a certain level of factual specificity; the district court cannot "accept as true conclusory

allegations or unwarranted deductions of fact."  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d

496, 498 (5th Cir. 2000) (quotation omitted).  However, a complaint need not set forth all the

facts upon which a claim is based; rather, a short and plain statement of the claim is sufficient if

it gives the defendant fair notice of what the claim is and the grounds upon which it rests.

*Twombly*, 550 U.S. at 545.

Determining whether a complaint states a plausible claim for relief will be a

context-specific task that requires the reviewing court to draw on its judicial experience and

common sense.  *Iqbal*, 129 S.Ct. at 1950.  When there are well-pleaded factual allegations, a

court should assume their veracity and then determine whether they plausibly give rise to an

entitlement to relief.  *Id.*   Here, the Court liberally construes the factual allegations of the *pro se*

Plaintiff, and finds that she has presented well-pled factual allegations.  *See Erickson v Pardus*,

551 U.S. 89, 94 (2007) (holding *pro se* litigant's pleadings are to be liberally construed and held

to less stringent standards than formal pleadings drafted by lawyers).  Taking all of Plaintiff's

well-pled factual allegations as true, the Court must next determine if the factual allegations in Plaintiff's *Amended Complaint* plausibly suggest an entitlement to relief.

### III. DISCUSSION

*1. Plaintiff's claims under 42 U.S.C. § 1981.*

Defendant contends that Plaintiff's claim against it should be dismissed because section 1981 does not allow a cause of action for discrimination against local government entities or government officials.  (Doc. 20 at 14).  Defendant correctly states the law.

Section 1981 provides a cause of action to remedy racial discrimination by private employers in private employment contracts.  *Oden v. Oktibbeha County, Miss.*, 246 F.3d 458, 462 (5th Cir. 2001) (internal citation omitted).  However, a cause of action for a section 1981 civil rights violation against local government actors must be brought under section 1983, not section 1981.  *See Jett v. Dallas Independent School District*, 491 U.S. 701, 731 (1989); *Foley v. University of Houston System*, 355 F.3d 333, 340 (5th Cir.2003) (same).  Moreover, courts have not imposed personal liability on government officials for discrimination under section 1981. *See Oden*, 246 F.3d at 462, 464.  Accordingly, because section 1981 does not apply to Defendant, Plaintiffs section 1981 claim fails to state a claim upon which relief may be granted.

*2. Title VII*

Plaintiff has brought claims under Title VII, based on race/national origin discrimination, for disparate treatment, hostile work environment,[1] and retaliation, *See* (Doc. 19).  Each is addressed in turn.

---

[1]"[A] plaintiff claiming employment discrimination based upon race [may] assert a claim for a racially hostile work environment, in addition to the classic claim of so-called 'disparate treatment.'"  *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 676-68 (1998).

<u>Disparate treatment</u>

 A disparate treatment claim requires a plaintiff to prove an adverse employment consequence and discriminatory intent by her employer.  *Burlington Indust., Inc. v. Ellerth*, 524 U.S. 742, 767-68 (1998).  In order to establish a *prima facie* case for discrimination under Title VII, Plaintiff must show that she: (1) is a member of a protected class; (2) was qualified for the position; (3) was the subject of an adverse employment action; and (4) she was replaced by someone outside the protected class or treated less favorably than similarly situated employees outside the protected class.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating."  *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002).  Actions such as assigning an employee more difficult work, giving employees unequal break times, and allegedly giving biased annual evaluations are not adverse employment actions within the meaning of Title VII.  *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 486 (5th Cir. 2008) (break requests); *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 407 (5th Cir. 1999) (unfair employee evaluations); *Benningfield v. City of Houston*, 157 F.3d 369, 376-77 (5th Cir. 1998) (heavier work load).

Defendant contends that Plaintiff failed to allege that she was subject to an adverse employment action or that she was replaced with or treated less favorably than similarly-situated "non-Hispanics." (Doc. 20 at 15-20).  Plaintiff's allegations that she was given undesirable tasks to perform and that supervisors permitted non-Hispanic employees to boss her around and eat in the manager's office (Doc. 18 at 3-8), do not constitute adverse employment actions within the meaning of Title VII.  However, Plaintiff's claims that she was suspended without pay and then

8

terminated do allege adverse employment actions.

Although Plaintiff's complaint sufficiently alleges that she suffered the adverse employment actions of suspension without pay and termination, Plaintiff has failed to allege any fact that plausibly suggests that she was replaced by someone outside the protected class or treated less favorably than similarly-situated employees outside the protected class.  In addition, the Court finds that Plaintiff's *Amended Complaint* does not contain allegations from which an inference may fairly be drawn that evidence on this material point will be introduced at trial. *Campbell*, 43 F.3d at 975.  Specifically, Plaintiff's *Amended Complaint* does not allege that a non-Hispanic employee was hired to replace her after she was terminated.  Nor has she alleged that any non-Hispanic employee was treated more favorably under the same situations she claims to have confronted, i.e., being suspended without pay after complaining of disparate treatment, fired after refusing transfer to another work site, or required to sign an agreement to use his/her personal time after being sent home from work.

Accordingly, the Court finds that Plaintiff has failed to allege facts that plausibly suggest an entitlement to relief under her claim of disparate treatment based on national origin.

<u>Hostile Work Environment</u>

The Supreme Court has emphasized that Title VII's prohibition "is not limited to 'economic' or 'tangible' discrimination." *Meritor Savings Bank FSB v. Vinson*, 477 U.S. 57, 64 (1986).  Rather, "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993) (quoting *Meritor*, 477 U.S. at 65, 67).

9

In order to establish a *prima facie* case for a hostile work environment claim, Plaintiff must prove: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on race/national origin; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353 (5th Cir. 2001).

For harassment to be sufficiently severe or pervasive to alter the conditions of the victim's employment, the conduct complained of must be both objectively and subjectively offensive. *Id.* at 21-22. Thus, not only must the victim perceive the environment as hostile, the conduct must also be such that a reasonable person would find it to be hostile or abusive. *Id.* To determine whether an environment objectively offensive, the Court evaluates the totality of the circumstances, including "the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, and whether it unreasonably interferes with the employee's work performance." *Id.* at 23. No single factor is determinative. *Id.*

Defendant avers that Plaintiff has "failed to allege any facts to show that a term, condition, or privilege of employment was materially affected when her co-workers made fun of her Spanish accent." (Doc. 20 at 22). However, the Court finds that Plaintiff has pled sufficient facts in support of her hostile work environment claim that plausibly suggest an entitlement to relief. In support of Plaintiff's hostile work environment claim, Plaintiff's *Amended Complaint* states: 1) Plaintiff's co-workers made fun of her accent and called her names; 2) Henderson told Plaintiff to follow the rules and obey co-workers; 3) Henderson assigned Plaintiff to undesirable work; 4) Henderson treated non-Hispanics differently (better); 5) Henderson "shouted at Plaintiff

10

and humiliated her in front of her coworkers"; 6) three other Hispanic females . . . who worked under the supervision of Patricia Henderson, also complained that [Henderson] showed favoritism to non-Hispanic employees, treated Hispanic employees harshly, shouted at them, made them work harder performing work others did not want to do; harassing them about speaking Spanish, demeaning and humiliating them . . . and by threatening them with their job if they complained."; and 7) that "several Hispanic females quit or were forced to quit due to the harassment and differential treatment."  (Doc. 18 at 3-6).  Plaintiff alleged that these events caused her to suffer "extreme physical and mental stress which made her workplace hostile to the extent she could not reasonably perform her normal duties and she requested a transfer to another school."  *Id*. at 5.

Under the totality of the circumstances test, a single incident of harassment, if sufficiently severe, can give rise to a viable Title VII claim; however, so can a continuous pattern of less severe incidents.  *E.E.O.C. v. WC&M Enterprises, Inc.*, 496 F.3d 393, 400 (5th Cir. 2007).  Although no single incident of harassment alleged by Plaintiff in this case is likely sufficient to establish severe or pervasive harassment, when considered together and viewed in the light most favorable to the Plaintiff, the factual allegations sufficiently plead a long-term pattern of pervasive harassment sufficient to establish a claim under Title VII.  *See WC&M Enterprises, Inc.*, 496 F.3d at 401.  Thus, the Court finds that Plaintiff has plead enough facts to state a claim of hostile work environment that is plausible on its face.  *See Twombly*, 550 U.S. at 570.

Accordingly, the Court finds that Plaintiff's hostile work environment claim survives Defendant's motion to dismiss for failure to state a claim.

11

Retaliation

Plaintiff avers that she was retaliated against for making reports and complaints of discrimination to her supervisors and the "HR department." (Doc. 18 at 11).  In order to establish a *prima facie* case for retaliation, Plaintiff must prove: (1) she engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action."  *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007).  Defendant avers that Plaintiff has failed to allege, *inter alia*, a causal link between her termination and her reports of harassment.  (Doc. 20 at 24-25).

Assuming that Plaintiff has sufficiently pled all other factors, the Court finds that Plaintiff's retaliation claim must fail because she has failed to plead any set of facts that establishes a causal link between any adverse employment action and her reports of harassment. In addition, the Court finds that Plaintiff's *Amended Complaint* does not contain allegations from which an inference may fairly be drawn that evidence on this material point will be introduced at trial.  *Campbell*, 43 F.3d at 975.  Plaintiff's *Amended Complaint* contains no factual allegations to support her conclusory assertions that she was discriminated against because of her prior complaint and reports of discrimination.  In fact, Plaintiff admits she was offered and declined to accept a transfer after her reports of harassment.  (Doc. 18 at 8).  She further alleges she was terminated "for refusing to agree to use her personal days in order to be paid during the five days that Defendant was conducting its investigation of her complaint of discrimination." *Id*.

Accordingly, the Court finds that Plaintiff has failed to allege facts that plausibly suggest an entitlement to relief under her retaliation claim.

Opportunity to Amend

Generally a district court errs in dismissing *pro se* claims under Rule 12(b)(6) for failure to state a claim without giving the plaintiff an opportunity to amend. *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998). However, allowing leave to amend is not required if the *pro se* plaintiff has already plead her "best case." *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986). The undersigned concludes that leave to amend is not required here, where Plaintiff had ample opportunity to plead her best case, as evidenced by her filing of an amended complaint after Defendant first moved to dismiss on the grounds discussed here. (Doc. 18). Moreover, in response to Defendant's second motion to dismiss, Plaintiff averred she had sent "all" of her "documents and proof." (Doc. 21 at 1). *See Jacquez*, 801 F.2d at 792 ("At some point a court must decide that a plaintiff has had fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit."). Therefore, the Court concludes that Plaintiff need not be given further opportunity to re-plead her disparate treatment and retaliation claims prior to dismissal.

## V. CONCLUSION

For the reasons discussed herein, it is recommended that Defendant's *Motion to Dismiss* (Doc. 20) be **GRANTED, only in part,** and that Plaintiff's disparate treatment and retaliation claims be **DISMISSED WITH PREJUDICE**.  It is further recommended that Defendant's *Motion to Dismiss* (Doc. 17) be **TERMINATED AS MOOT**.

**SO RECOMMENDED** September 26, 2011.

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

14