IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MARIA GARCIA, | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | §   Civil Action No. 3:11-CV-0502-N-BK |
| | § |
| GARLAND INDEPENDENT SCHOOL DISTRICT, | § |
| | § |
| Defendant. | § |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to *Special Order 3*, this case has been referred to the undersigned for pretrial management. The Court now considers Defendant's *Motion to Dismiss Plaintiff's Second Amended Complaint*. (Doc. 40). After reviewing the pleadings and applicable law, the Court finds Defendant's *Motion to Dismiss Plaintiff's Second Amended Complaint* (Doc. 40) should be granted only as to Plaintiff's pattern or practice claim and denied in all other respects.

**I. BACKGROUND**

On March 10, 2011, Plaintiff, filed her *pro se* complaint against Garland Independent School District (GISD). (Doc. 1). On March 9, 2012, the District Judge determined that Plaintiff's disparate treatment and retaliation claims brought under 42 U.S.C. § 1981 were subject to dismissal; however, the Court permitted Plaintiff to amend those claims. (Doc. 22, 25, 36). Plaintiff's *Second Amended Original Complaint,* filed through her counsel on June 5, 2012, is the subject of the motion to dismiss now under consideration. (Docs. 38, 40).

In her *Second Amended Original Complaint,* Plaintiff alleges violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq*., (Title VII), specifically,

1

disparate treatment, hostile work environment, and retaliation -- all based on her national origin.[1] (Doc. 38).

Plaintiff is a Hispanic female who worked as a cook for Defendant at Lakeview High School. (Doc. 38 at 3). While employed there, Plaintiff was supervised by Patricia Anderson, who is white and non-Hispanic. *Id*. Plaintiff avers that under Anderson's supervision, she was subject to harassment and differential treatment because she is Hispanic. *Id*. Specifically, Plaintiff claims that several of her Caucasian and African American co-workers made fun of her and harassed her because of the way she pronounced certain English words due to her Spanish accent; ordered her around, telling her what work she needed to do even though they were not her superiors; and ridiculed her by calling her names and making fun of her accent. *Id*. Plaintiff avers that despite her best efforts to perform the work as instructed, these co-workers nonetheless complained to the supervisor about her. *Id*.

When Plaintiff complained to Anderson about her co-workers' harassment of her, Anderson always sided with the co-workers, telling Plaintiff that she was to do whatever anyone told her to do, keep quiet, and follow Anderson's rules or quit. *Id*. In addition, Plaintiff contends that Anderson prohibited the Hispanic employees from speaking Spanish at work; stating that if they did not like her rules, they could walk out the door or ask for a transfer, and that she would not rest until Plaintiff and two other Hispanic employees were fired. *Id*. Plaintiff also asserts that Anderson frequently shouted at her and humiliated her in front of her co-workers, and forced Plaintiff to perform additional tasks that were not her responsibility, including performing tasks that co-workers did not want to. *Id*. at 4. For example, Plaintiff was involuntarily moved into a

---

[1] Plaintiff contends Defendant's actions "constitute discrimination against her, because of her national origin,

position in which a black male co-worker refused to perform or could not perform. *Id*.

Plaintiff contends that in or about March and April of 2010, she complained to Matthew Foreman, Assistant Director of Operations in the Department of Food Services at GISD, and Marc Hagen, Field Supervisor in the Department of Food Services at GISD, about the discriminatory treatment she was experiencing, including harassment from two co-workers, Priscilla and Brenda, but GISD ignored her complaint. *Id*. Plaintiff states she also complained to Jim Ross, the Director of Human Resources (HR) at GISD, about the harassment she was subjected to by her co-workers, as well as the differential treatment by Anderson. *Id*. According to Plaintiff, Jim Ross advised her to ignore the comments made by her co-workers and promised to get her help. *Id*. Plaintiff alleges that Ross, however, failed to perform an adequate investigation or to take steps designed to redress and/or prevent the harassment and that the discriminatory treatment by Anderson worsened. *Id*.

After the school year, Plaintiff requested a transfer from Lakeview because of the harassment and because she knew she could not continue to work with Anderson due to her discriminatory treatment. *Id*. at 5. However, when the new school year began, Plaintiff was again assigned to the same position at Lakeview under the supervision of Anderson. *Id*. Anderson continued to treat non-Hispanic employees more favorably, and Plaintiff continued to experience harassment from her non-Hispanic co-workers, including being ridiculed for her Spanish accent and called a cry baby and dumb. *Id*. Plaintiff avers that she again reported this discrimination to Jim Ross, noting that non-Hispanic employees received preferential treatment from Anderson while Hispanic employees were treated as inferior. *Id*. For example, Plaintiff

---

Hispanic." (Doc. 38 at 8).

3

observed that two black co-workers and a white co-worker would sit in Anderson's office and eat, while all the Hispanic workers were made to work. *Id*. Other Hispanic employees also complained to HR about the discriminatory treatment of Hispanics and the demeaning and humiliating working conditions, and several ultimately quit their employment as a result of the harassing and discriminatory environment. *Id*.

Plaintiff avers that, on November 12, 2010, she was working in the cafeteria when a co-worker asked her to go get the keys to the cafeteria window. *Id*. Plaintiff responded that she could not because she was too busy with her assigned tasks, and it was his job to get the keys to close the window before he started counting the cash drawer. *Id*. However, Anderson later called Plaintiff into her office and asked her why she did not go get the keys for the co-worker. *Id*. Anderson then told Plaintiff that she had to obey the co-worker and that if she did not like her rules to "punch out" and leave the premises. *Id* at 5-6. Plaintiff punched out and left work at about 1:30 p.m. *Id*. at 6.

According to Plaintiff, later that afternoon, she spoke to Foreman about what had transpired earlier that day and he stated that it would take a few days to investigate the matter and instructed Plaintiff not to report to work until further notice. *Id*. Subsequently, Plaintiff went to the HR office and spoke to Jim Ross about the incident. *Id*. Ross stated that he would look for another position for her and contact her later. *Id*. Plaintiff informed Ross that she only had a few personal days available and did not want to use them; to which Ross responded that she should not worry and that he would address the problem as soon as possible. *Id*. Plaintiff alleges that Ross acknowledged that other complaints had been made about Anderson's conduct, and that he considered this type of conduct harassment. *Id*. The next day, Plaintiff called Ross to confirm

4

that he was going to pay her for the days she lost and Ross's secretary Ana called back and stated that Plaintiff would be paid for the days she lost and would not be forced to use her personal days. *Id*.

On November 19, 2010, Ross called Plaintiff and advised that she could transfer to Rowlett High School or stay at Lakeview. *Id*. After Plaintiff responded that Rowlett High School was too far for her to travel, Ross instructed her to report to work at Lakeview on November 22, 2010, at 7:00 a.m. *Id*. Ross also advised Plaintiff that she would be receiving a written warning. *Id*. On November 22, 2010, Plaintiff arrived for work at 7:00 a.m., and around 9:00 a.m., Anderson called Plaintiff to her office and gave her a written warning. *Id*. at 7. Hagan was also present. *Id*. Plaintiff signed the warning, noting her disagreement with its contents. *Id*.

Plaintiff was asked to also sign a statement agreeing to use her personal time for the time she was placed on leave. *Id*. Plaintiff refused to sign the statement because she had been led to believe that she would be paid for that time off. *Id*. At that point, Hagan became angry, and Plaintiff was then escorted to Foreman's office where she was informed that she was no longer employed by GISD because she had refused the transfer to Rowlett. *Id*. Plaintiff states that she expressed her disagreement and informed Foreman of her conversation and agreement with Jim Ross. *Id*. Plaintiff then went to Ross's office, where Ross denied that he had promised to pay her for the days she was placed on leave. *Id*. On November 22, 2010, Plaintiff was terminated for insubordination. *Id*.

## II. APPLICABLE LAW

Motions to dismiss under Federal Rule of Civil Procedure Rule 12(b)(6) are disfavored and rarely granted. *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981). However, a complaint

must be dismissed pursuant to Rule 12(b)(6) if it fails to state a claim upon which relief may be granted. Under the 12(b)(6) standard, a court cannot look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir.1999). When considering a motion to dismiss, the court accepts as true all well-pleaded facts and views those facts in a light most favorable to the plaintiff. *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995). Dismissal is required when a complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citations omitted).

A plaintiff's complaint should "contain either direct allegations on every material point necessary to sustain a recovery… or contain allegations from which an inference may fairly be drawn that evidence on these material points will be introduced at trial." *Campbell*, 43 F.3d at 975. Moreover, the complaint should not simply contain conclusory allegations, but must be pled with a certain level of factual specificity; the district court cannot "accept as true conclusory allegations or unwarranted deductions of fact." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (quotation omitted). However, a complaint need not set forth all the facts upon which a claim is based; rather, a short and plain statement of the claim is sufficient if it gives the defendant fair notice of what the claim is and the grounds upon which it rests. *Twombly*, 550 U.S. at 545.

Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Iqbal*, 129 S.Ct. at 1950. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*.

Thus, taking all of Plaintiff's well-pled factual allegations as true, the Court must determine if the factual allegations in Plaintiff's *Second Amended Original Complaint* plausibly suggest an entitlement to relief.

### III. DISCUSSION

Disparate treatment

As to Plaintiff's disparate treatment claim, Defendant argues that she was not subject to an adverse employment action prior to her termination. (Doc. 40 at 16-19). Plaintiff's allegations of being placed on unpaid leave prior to termination qualify as a claim of an adverse employment action, however.

A disparate treatment claim requires a plaintiff to prove an adverse employment consequence and discriminatory intent by her employer. *Burlington Indust., Inc. v. Ellerth*, 524 U.S. 742, 767-68 (1998). In order to establish a *prima facie* case for discrimination under Title VII, Plaintiff must show that she: (1) is a member of a protected class; (2) was qualified for the position; (3) was the subject of an adverse employment action; and (4) she was replaced by someone outside the protected class or treated less favorably than similarly situated employees outside the protected class. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating. *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007). Actions such as assigning an employee more difficult work, giving employees unequal break times, and allegedly giving biased annual evaluations are not adverse

7

employment actions within the meaning of Title VII. *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 486 (5th Cir. 2008) (break requests); *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 407 (5th Cir. 1999) (unfair employee evaluations); *Benningfield v. City of Houston*, 157 F.3d 369, 376-77 (5th Cir. 1998) (heavier work load).

Here, Plaintiff alleges that prior to being terminated, she was "subject to discipline [and] placed on unpaid leave . . . due to her Hispanic national origin." (Doc. 38 at 8). Being placed on unpaid leave necessarily affected Plaintiff's compensation, and is, therefore, an adverse employment action that occurred prior to the termination of Plaintiff's employment.

Accordingly, Defendant's motion to dismiss as to Plaintiff's disparate treatment claims should be **DENIED**.

<u>Hostile Work Environment</u>

Defendant avers that Plaintiff failed to plead facts establishing that the alleged harassment affected a term, condition, or privilege of employment. (Doc. 40 at 20). The Court disagrees, however, and finds that Plaintiff has pled sufficient facts in support of her hostile work environment claim which plausibly suggest an entitlement to relief.

The Supreme Court has emphasized that Title VII's prohibition "is not limited to 'economic' or 'tangible' discrimination." *Meritor Savings Bank FSB v. Vinson*, 477 U.S. 57, 64 (1986). Rather, "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993) (*quoting Meritor*, 477 U.S. at 65, 67).

In order to establish a *prima facie* hostile work environment claim, Plaintiff must prove:

8

(1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on race/national origin; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353 (5th Cir. 2001).

For harassment to be sufficiently severe or pervasive to alter the conditions of the victim's employment, the conduct complained of must be both objectively and subjectively offensive. *Id*. at 21-22. Thus, not only must the victim perceive the environment as hostile, the conduct must also be such that a reasonable person would find it to be hostile or abusive. *Id*. To determine whether an environment objectively offensive, the Court evaluates the totality of the circumstances, including "the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, and whether it unreasonably interferes with the employee's work performance." *Id*. at 23. No single factor is determinative. *Id*.

In her *Second Amended Original Complaint*, Plaintiff alleges: (1) her co-workers made fun of and harassed her because of the way she pronounced certain English words due to her Spanish accent, and that they ridiculed her by calling her names and making fun of her accent; (2) Supervisor Anderson always sided with the co-workers, telling Plaintiff that she was to do whatever anyone told her to do and to keep quiet and to follow her rules or quit; (3) Anderson forbade the Hispanic employees to speak Spanish at work; (4) Anderson stated that if the Hispanic employees did not like her rules they could walk out the door or ask for a transfer, and that she would not rest until Plaintiff and two other Hispanic employees were fired; (5) Anderson frequently shouted at Plaintiff and humiliated her in front of her co-workers; (6) Anderson forced

9

Plaintiff to perform additional tasks that were not her assigned responsibility, including less-desirable tasks that other co-workers did not want to perform; (7) Anderson treated non-Hispanic employees more favorably, while requiring the Hispanic workers to be subservient; and (8) other Hispanic employees also complained to HR about the discriminatory treatment of Hispanics and the demeaning and humiliating working conditions, and several ultimately quit their employment as a result of the harassing and discriminatory environment. (Doc. 38 at 3-5).

Under the totality of the circumstances test, a single incident of harassment, if sufficiently severe, can give rise to a viable Title VII claim, however, so can a continuous pattern of less severe incidents. *E.E.O.C. v. WC&M Enterprises, Inc.*, 496 F.3d 393, 400 (5th Cir. 2007). Although no single incident of harassment alleged by Plaintiff in this case is likely sufficient to establish severe or pervasive harassment, when all the reported incidents are considered together and viewed in the light most favorable to the Plaintiff, they allege a continuous and pervasive pattern of harassment sufficient to establish a claim under Title VII. *See WC&M Enterprises, Inc.*, 496 F.3d at 401.

Thus, Plaintiff has plead enough facts to state a hostile work environment claim that is plausible on its face, s*ee Twombly*, 550 U.S. at 570, and Defendant's motion to dismiss for failure to state a claim should be **DENIED**.

<u>Retaliation</u>

Plaintiff avers that she was retaliated against for making reports and complaints of discrimination. (Doc. 38 at 10). However, Defendant avers that Plaintiff has failed to allege a causal link between her termination and her reports of harassment or that Defendant was aware of Plaintiff's complaints. (Doc. 40 at 25-27). Defendant's argument lacks merit.

10

In order to establish a *prima facie* case for retaliation, Plaintiff must prove: (1) she engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007).  Here, Plaintiff has alleged a causal link between her termination and her reports of harassment.  Specifically, Plaintiff avers that she was placed on leave after complaining of Anderson's conduct and that in Plaintiff's subsequent conversation with Ross, he stated that he considered Anderson's conduct harassment. (Doc. 38 at 5-6).  Moreover, Plaintiff avers that she was terminated less than ten days after she complained of harassment because she refused to accept a transfer. *Id*. at 10.  Finally, Plaintiff alleges that Defendant's supervising employees were aware of her complaints and that the proffered reason for her termination, subordination, is nothing more than pretext for its retaliatory animus. *Id*. at 6-7, 10.

Accordingly, Plaintiff has alleged facts that plausibly suggest an entitlement to relief under her retaliation claim and Defendant's motion to dismiss should be **DENIED**.

<u>Pattern or Practice</u>

Defendant argues that Plaintiff's pattern or practice cause of action should be dismissed because, *inter alia*, the new claim was added without leave of court. (Doc. 40 at 27-29). Plaintiff does not oppose the striking of this cause of action. (Doc. 41 at 23)  Accordingly, Plaintiff's pattern or practice claim should be dismissed.

### V. CONCLUSION

For the reasons discussed herein, it is recommended that Defendant's *Motion to Dismiss Plaintiff's Second Amended Complaint* (Doc. 40) be **GRANTED IN PART**, inasmuch as

11

Plaintiff's pattern or practice claim be dismissed with prejudice.  In all other respects, it is recommended that the motion be **DENIED**.

     **SIGNED** August 29, 2012.

                                            RENEE HARRIS TOLIVER
                                            UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

     A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

                                            RENEE HARRIS TOLIVER
                                            UNITED STATES MAGISTRATE JUDGE