**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **MARIA GARCIA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:11-CV-0502-N-BK** |
| | § | |
| **GARLAND INDEPENDENT SCHOOL** | § | |
| **DISTRICT,** | § | |
| | § | |
| **Defendant.** | § | |

<u>**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**</u>

Pursuant to *Special Order 3*, this case has been referred to the undersigned for pretrial management. The Court now considers Defendant's *Motion for Summary Judgment*. (Doc. 50). After reviewing the pleadings and applicable law, the Court recommends that Defendant's motion be **DENIED** in its entirety.

**I. BACKGROUND**

Plaintiff, a Hispanic female and former cook for GISD's Lakeview High School, brought this action against GISD for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq*., (Title VII), specifically, disparate treatment, hostile work environment, and retaliation -- all based on her national origin.[1] (Doc. 38).

Defendant moves for summary judgment in its favor on all claims, arguing that (1) Plaintiff's claims of national origin discrimination prior to January 27, 2010 are barred for Plaintiff's failure to timely exhaust administrative remedies; and (2) Plaintiff has failed to make a prima facie case of disparate treatment, hostile work environment, or retaliation. (Doc. 50).

**II. APPLICABLE LAW**

---

[1] Plaintiff contends Defendant's actions "constitute discrimination against her, because of her national origin, Hispanic." (Doc. 38 at 8).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A party moving for summary judgment has the initial burden of "informing the district court of the basis for its motion and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the moving party has properly supported its motion for summary judgment, the burden shifts to the non-moving party to "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotes omitted).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id*. Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994). Moreover, affidavits stating "ultimate or conclusory facts and conclusions of law" standing alone are insufficient to support a grant or denial of summary judgment. *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### III. DISCUSSION

1. Limitations

Defendant argues that Plaintiff's claims of harassment and discrimination alleged to have

occurred prior to January 27, 2010, including any incidents at Plaintiff's previous school before

her transfer to Lakeview High School in April 2009, are barred for failure to timely exhaust

administrative remedies.  (Doc. 50-1 at 26).  Defendant contends that because Title VII requires

a charge of discrimination be filed within 300 days from the date of the alleged violation, and

Plaintiff filed her Charge of Discrimination on November 23, 2010, she is thus barred from

bringing any claims for discrimination that occurred before March 15, 2010.  (*Id.* at 25; Doc. 50-

9 at 54).

Plaintiff counters that Defendant has failed to identify which, if any, of Plaintiff's claims

are allegedly barred.  (Doc. 52 at 23).  She further avers that her complaint properly alleges a

"continuing violation" based on a pattern of discrimination against Spanish-speaking employees

by the same supervisor and co-workers at Lakeview High School, which occurred frequently and

continued into the limitations period.  *Id.* at 23-25.

Ordinarily, an employee may not base a Title VII claim on an action that was not

previously asserted in a formal charge of discrimination to the EEOC, or that could not

"reasonably be expected to grow out of the charge of discrimination."  *Pacheco v. Mineta,* 448

F.3d 783, 789 (5th Cir. 2006) (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th

Cir. 1970).  However, under the continuing violation exception, a plaintiff is relieved of

"establishing that all of the complained-of conduct occurred within the actionable period if the

plaintiff can show a series of related acts, one or more of which falls within the limitations

period."  *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 351 (5th Cir. 2001) (citing

3

*Messer v. Meno*, 130 F.3d 130, 135 (5th Cir. 1997)).  The Court considers three factors in determining the existence of continuing violation: (1) whether the alleged acts demonstrate the same type of discrimination; (2) whether the nature of the alleged acts is recurring or isolated; and (3) whether the alleged acts have the degree of permanence that should trigger an employee's awareness of and duty to assert his or her rights.  *Celestine*, 266 F.3d at 352.  "In addition, the continuing violation theory requires the same type of discriminatory acts to occur both inside and outside the limitations period, such that a valid connection exists between them." *Id.*  (internal quotation omitted).

Contrary to Defendant's assertions, it appears that Plaintiff has not alleged specific acts of discrimination at South Garland High School ("SGHS") and only references her tenure and departure from SGHS as background.  She alleges in her second amended complaint that she began her employment with GISD at South Garland High School in 2008, and then transferred to Lakeview High School "due to harassment by co-workers at South Garland."  *See* Doc. 38 at 3. Her claims, however, are based on events that occurred after her transfer to Lakeview High School in May 2009.  *Id.*

While Defendant does not indicate the specific claims that should be dismissed as time barred, the Court finds that any acts alleged to have occurred at LHS and under the supervision of Anderson are excepted under the continuing violation doctrine in relation to Plaintiff's hostile work environment claims.  Although Defendant argues that Plaintiff has not alleged any action under the "continuing violation doctrine" which would salvage her barred claims (Doc. 50-1 at 26), Plaintiff alleges and offers supporting evidence that she was victim of similar acts of harassment on account of her nation origin throughout her employment at Lakeview High School.  (Doc. 38 at 3-7, 9, 11).  *See Filer v. Donley*, 690 F.3d 643, 647 (5th Cir. 2012)

(reaffirming the viability of the continuing violation doctrine as to hostile work environment claims).  Reviewing the evidence in the light most favorable to Plaintiffs claims, there is evidence that throughout her tenure at LHS, the same group of co-workers and supervisor perpetrated the alleged discriminatory acts (i.e., name-calling, teasing, increasing work load, and prohibiting the use of Spanish).  (Doc. 50-3 at 75-83; Doc. 53 at 6-7, 10); *Celestine*, 266 F.3d at 352.  Thus, there is sufficient nexus between the national origin discrimination claims alleged in her November 2010 EEOC charge and the hostile work environment she alleges existed since her tenure began at LHS.  *Martineau*, 203 F.3d at 913.  As mentioned previously, Defendant does not indicate any other specific claim/allegation it contends is barred by Plaintiff's failure to exhaust, and the Court does not hazard a guess.

Accordingly, Defendant's motion for summary judgment dismissing Plaintiff's claims on statute of limitations grounds should be **DENIED**.

2. Hostile Work Environment

To prevail on a claim of a hostile work environment under Title VII, an employee initially must make a prima facie case of the following elements: (1) that the employee belongs to a protected class; (2) that the employee was subject to unwelcome harassment; (3) that harassment was based on her membership in the protected class; (4) that the harassment affected a term, condition, or privilege of her employment, and (5) that the employer knew or should have known of the harassment and failed to take prompt remedial action.  *E.E.O.C. v. WC & M Enterprises, Inc.*, 496 F.3d 393, 399 (5th Cir. 2007).  If the harasser is a supervisor with authority over the employee, only the first four elements need be shown.  *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999).

"Whether an environment is hostile or abusive depends on a totality of circumstances,

including factors such as the frequency of the conduct, its severity, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance." *Septimus v. Univ. of Houston*, 399 F.3d 601, 611 (5th Cir. 2005). If the conduct at issue was not severe or pervasive, the employer cannot be held vicariously liable for the supervisor's actions. *Wyatt v. Hunt Plywood Co., Inc.*, 297 F.3d 405, 409 (5th Cir. 2002). If, however, the conduct was severe or pervasive, the employer may attempt to avoid liability by demonstrating (1) that the employer exercised reasonable care to prevent and correct promptly any harassing behavior; and (2) the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Alzuraqi v. Group 1 Auto., Inc*., 921 F. Supp. 2d 648, 658 (N.D. Tex. 2013) (Lindsay, J.).

Plaintiff's hostile work environment claim stems from her allegations of harassment by several co-workers and her supervisor, Anderson, and Anderson's alleged prohibition against speaking Spanish in the LHS cafeteria. (Doc. 38 at 9; Doc. 52 at 9-13). It is undisputed that Plaintiff belongs to a protected class. Moreover, Defendant does not suggest the lack of a genuine issue of material fact as to whether Plaintiff was subjected to harassment. Nevertheless, Defendant contends that Plaintiff's hostile work environment claim fails because Plaintiff has not "establish[ed] that any alleged harassment was based on national origin or affected a term, condition or privilege of employment." (Doc. 50-1 at 42, 47).

a. <u>National Origin</u>

Defendant argues that the alleged name calling cannot be attributed to Plaintiff's national origin. *Id.* at 42. Specifically, Defendant contends that the names Plaintiff's co-workers and Anderson allegedly called her -- "hot ho," "dumb" and "crybaby" -- are not related to her being Hispanic and, in any event, are "mere offensive utterances that cannot rise to the level of a violation of Title VII." *Id.* at 42-43. Defendant also asserts that Plaintiff cannot attribute her allegations of a heavier work load or less-desirable work assignments, jokes about her mispronunciation of certain English words, or the alleged prohibition against speaking Spanish to Plaintiff's national origin. *Id.* at 43-44.

In her response, Plaintiff avers she was subjected to daily harassment that was directly related to her Hispanic origin, specifically, laughing at her Spanish accent and mispronunciation of English words, prohibiting her use of Spanish, and labeling her a "crybaby" and "dumb" when she became upset or complained about the harassment. (Doc. 52 at 42, 44-45; Doc. 53 at 4-8, 10). Plaintiff also testified that Anderson often joined in the co-workers' jokes about Plaintiff's mispronunciation of English words, and daily called Plaintiff "crybaby." (Doc. 52 at 44-45; Doc. 50-3 at 97; Doc. 53 at 10). While Defendant is correct that such name-calling does not, in and of itself, constitute discrimination under Title VII, the fact that the names were allegedly uttered because of Plaintiff's reaction to other harassment inflicted on account of national origin, make these incidents relevant to Plaintiff's allegations of hostile work place under Title VII.

Moreover, Plaintiff also testified at deposition that she was physically confronted by coworkers and forced to say certain English words for their amusement. (Doc. 53 at 10). Plaintiff also claimed she and the other Hispanic employees were required to do more work than the other non-Hispanic employees. (Doc. 52 at 44-45; Doc. 53 at 8-9).

Plaintiff argues that Anderson's regular prohibition of Spanish use in the cafeteria was significant and directly related to her national origin.  (Doc. 53 at 5, 190).  Following the issuance of a memorandum directing GISD personnel not to limit the use of any language, Plaintiff claims Anderson held a meeting to advise the Spanish-speaking employees that they could speak Spanish only during lunchtime, but not in "her kitchen," and that they needed to respect her and "her rule."  *Id*.  Anderson testified at deposition that she "may have" prohibited employees from speaking Spanish in the presence of non-Spanish speaking employees due to complaints she received from non-Spanish speaking employees that they felt uncomfortable when the Hispanic employees spoke Spanish.  *Id*. at 177-79, Anderson Deposition.

Plaintiff averred that as a result of the policy, she was afraid to speak at work -- for fear of termination -- and that she felt ashamed of her national origin, her Spanish accent, and the fact that she could not speak English fluently.  *Id*. at 6.  Plaintiff claims that it was also around the time of Anderson's no-Spanish policy that her non-Spanish speaking co-workers began to make fun of her Spanish accent and mispronunciation of English words, and that she also experienced emotional pain as a result of their ridicule.  *Id*. at 6-7.

Plaintiff additionally attaches an affidavit of Maribel Marin, a former employee of Defendant and native Spanish speaker, who corroborates Plaintiff's claims that Anderson instructed the Spanish-speaking employees at Lakeview that they could not speak Spanish in "her kitchen," and that co-workers would ridicule the way she and Plaintiff pronounced certain English words and referred to Plaintiff as "punta," which is Spanish for "whore."  *Id*. at 19-20.  Marin averred that she brought a copy of the United States Constitution to work to show Anderson that they had freedom of speech, but Anderson became very angry and told them they could not speak Spanish in her kitchen.  *Id*. at 20-21.  Marin further stated that she and Plaintiff

complained to Jim Ross about the way Anderson was treating them, and she (Marin) eventually

resigned due to the alleged harassment. *Id*. at 21.  Attached to Marin's affidavit is a copy of her

letter of resignation in which she explains that she is resigning due to "a lot of discrimination, a

lot of racism, [and] preferential treatment," which caused her stress at work. *Id*. at 25-26.

This Court does not make credibility determinations and must consider the evidence in

the light most favorable to Plaintiff.  Under that standard, Plaintiff has presented sufficient

evidence of the alleged harassment based her national origin.  Thus, there remains a "serious fact

question regarding the motivation for the alleged harassing conduct" and "the jury must

determine whether some or all of this alleged conduct was motivated by . . . [Plaintiff's] national

origin" as defined by Title VII. *Alvarado v. Shipley Donut Flour & Supply Co., Inc*., 526 F.

Supp. 2d 746, 758 (S.D. Tex. 2007); *see also Russell v. McKinney Hosp. Venture*, 235 F.3d 219,

225 (5th Cir. 2000) (stating a jury is in best position to evaluate contested evidence regarding

employer's motivation).  Additionally, summary judgment is inappropriate in cases where, as

here, a plaintiff has raised a reasonable inference that the alleged harassment was motivated by a

discriminatory animus. *See EEOC v. WC&M Enters., Inc.*, 496 F.3d 393, 400-01 (5th Cir. 2007)

(reversing grant of summary judgment in an employment discrimination case where the

"factfinder could reasonably conclude" that alleged mistreatment was "motivated by animus

stemming from [the plaintiff's] national origin.")

b. Materially Affect Terms of Employment

Next, Defendant avers that Plaintiff has not provided evidence that the alleged

harassment materially affected a term, condition or privilege of employment, or that Anderson

took adverse employment action against Plaintiff because of her accent or use of Spanish. *Id*. at

44.  Defendant also argues that the alleged harassment was not sufficiently severe or pervasive

enough to be actionable, and that a reasonable person would not have found the work environment to be hostile.   *Id*. at 45-47.

Considering the evidence under the Fifth Circuit's totality of the circumstances test, and in the light most favorable to Plaintiff, she has presented sufficient evidence to create a fact issue as to whether the alleged harassment was severe or pervasive enough to alter a condition of her employment.   *WC&M Enter., Inc*., 496 F.3d at 400.   As outlined in the previous section, Plaintiff averred that the ridicule and name calling occurred on a daily basis.   She stated Anderson, specifically, ridiculed her daily, calling her a "crybaby" after she became upset about being ridiculed, assigned her more tasks than the other non-Hispanic employees, and made fun of her Spanish accent.   (Doc. 53 at 7, 9-10, 191).   These actions, coupled with Anderson's alleged prohibition of Spanish in the kitchen and Plaintiff's resulting anxiety and fear, are sufficiently pervasive that there remains a serious question of material fact as to whether the alleged harassment affected a term or condition of Plaintiff's employment.   *See id*. at 401 (holding that evidence that showed a long-term practice of ridicule was sufficient to establish a claim under Title VII and defeat summary judgment) (collecting cases); *Alzuraqi*, 2013 WL 395536, at *7 (concluding that while single incidents are unlikely to establish severe or pervasive harassment, evidence demonstrating a frequent pattern of harassment is sufficient for a reasonable jury to find discrimination under Title VII).

c. Prompt Remedial Action and Knowledge

The Court of Appeals for the Fifth Circuit distinguishes harassment by a supervisor from that by a co-worker in that a plaintiff is not required to establish the fifth element -- that the employer knew or should have known of the harassment and failed to take prompt remedial action -- to establish a prima facie case of harassment in the case of a supervisor.   *Watts v.*

*Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999).  "An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Burlington Industries*, 524 U.S. at 765.  However, "[w]hen no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence." *Id.* (citing FED. R. CIV. P. 8(c)).  Tangible employment actions include "discharge, demotion or undesirable reassignment." *Id.*

In this case, the parties do not contest that Anderson was Plaintiff's supervisor. However, Plaintiff has not alleged that Anderson's behavior culminated in Anderson initiating a tangible employment action against Plaintiff, therefore, Defendant in entitled to raise an affirmative defense to avoid vicarious liability.  Thus, the Court considers Defendant's affirmative defense to vicarious liability in conjunction with the fifth element as it relates to the alleged harassment by Plaintiff's coworkers -- that Defendant knew or should have known of the situation but failed to take prompt, remedial action.

Defendant maintains that it took prompt, remedial action with regard to all worker harassment complaints, including Plaintiff's written complaint. *Id.* at 47.  Defendant first points to an investigation ordered by Ross, which consisted of interviewing three of Plaintiff's co-workers and speaking with the food service director about Anderson.  (Doc. 50-1 at 48; Doc. 50-4 at 27-31; Doc. 50-12 at 5).  Defendant also contends that it offered to transfer Plaintiff to another campus in response to her complaints of unfair treatment at LHS, but that Plaintiff declined, claiming that the transfer would result in an additional commute that she could not afford.  (Doc. 50-1 at 49; Doc. 50-3 at 103; Doc. 50-4 at 39, 45-46, 49, 53-58, 71; Doc. 50-9 at 17).

In response, Plaintiff cites evidence she contends demonstrates that Defendant had actual knowledge Anderson was prohibiting Hispanic employees from speaking Spanish, including (1) Plaintiff's affidavit in which she avers that in July 2010, she and Marin told Jim Ross that Anderson did not allow them to speak Spanish at work (Doc. 53 at 9); (2) the affidavit of Marin corroborating that Anderson did not allow them to speak Spanish at work (*Id*. at 25); and (3) the deposition of Jim Ross to show that he was aware that another Hispanic employee, Cleo Garcia, complained of Anderson's alleged prohibition of Spanish use at work. *Id*. at 70; (Doc. 52 at 46-47). Other evidence submitted shows that in April 2010, Plaintiff made a written complaint to Matt Foreman that Anderson "treated her like a slave," and that the other employees made fun of her and the other Hispanics when they spoke English. (Doc. 50-12 at 2-4).

Plaintiff avers that Defendant did not take remedial action in response to her complaints, and that the only investigation it conducted was insufficient, as: (1) it consisted of interviewing only three non-Hispanic workers; (2) the questions posed to the interviewed employees were not designed to elicit information regarding the alleged discrimination against Hispanic workers; and (3) the interviewed employees' response was that the "Spanish-speaking employees at Lakeview ma[de] [them] uncomfortable." (Doc. 52 at 48-49; Doc. 53 at 115-18, Ross Deposition). Plaintiff also argues that offering a victim-employee a lateral transfer is not a remedial action. (Doc. 52 at 50).

The Court finds from the foregoing evidence that Defendant's agents were aware of Plaintiff's written complaint, but that contrary to Defendant's assertion of prompt remedial action, Anderson was never informed about Plaintiff's written complaint and was never prompted to initiate remedial measures in response to it. *See* Doc. 50-5 at 17, Anderson Deposition. (Anderson stating that she never saw Plaintiff's written complaint, and that no one

12

spoke to her about the complaint).  The evidence in the record further shows that although Ross expressed concerns to Matthew Foreman and Glenda Lewis about Anderson's behavior towards Hispanic employees, their sole response was that they had no issues with Anderson in the past. *See* Doc. 50-4 at 32-33, Ross Deposition (Ross stating that Lewis and Foreman claimed they had no prior complaints about Anderson and that he was unaware of any additional steps taken to address the complaints).

Additionally, the evidence viewed in the light most favorable to Plaintiff supports her argument that the investigation of her complaint was insufficient, specifically, that only three non-Hispanic employees were interviewed, and each was asked a single question -- "if the employee had ever heard any employees or managers speaking to each other in a disrespectful or unprofessional way?"  (Doc. 50-12 at 5).  Indeed, the interviewed employees' responses that the Spanish-speaking employees were trying to "cause trouble," and that they felt uncomfortable when the Hispanic employees spoke Spanish, might have suggested the need to investigate further.  *Id.*  However, there is no evidence that Defendant took additional steps after the cursory investigation to remedy the situation about which Plaintiff complained.  Taken as a whole, there is at least a genuine issue of material fact as to whether Defendant took sufficient prompt, remedial action in addressing Plaintiff's complaints about Anderson and coworkers.

Moreover, it is uncontested that Defendant also offered Plaintiff a transfer as a remedial measure.  Defendant avers that it was unreasonable for Plaintiff to decline the transfer because the new school was less than four miles away from her old school.  And, contrary to Plaintiff's argument, a transfer can be considered a remedial measure in a hostile work environment claim. *See, e.g., Leal v. City of Corpus Christi,* 120 F.3d 266 (5th Cir. 1997) (finding that a defendant took remedial action by placing a plaintiff on paid administrative leave and offering the plaintiff

a transfer).  However, whether Plaintiff unreasonably failed to take advantage of such remedial measures by declining to take the transfer due to the distance is disputed, and properly left to determination by the trier of fact.  Thus, summary judgment is not appropriate on this point.

 d. Prohibition on Spanish

 Lastly, in light of Plaintiff's allegations that speaking her native language of Spanish was prohibited at work, Defendant asserts that it clearly stated GISD policy to the contrary in a memorandum dated May 13, 2009, which was circulated and posted in the cafeteria where Plaintiff worked: "Garland ISD will not limit the use of any language used by its employees as long as safety is not compromised."  (Doc. 50-1 at 48; Doc. 50-12 at 6, Garland ISD Memo). While the evidence supports Defendant's contention it did not have a restrictive language use policy and no general intention that Spanish use be restricted in its facility (Doc. 50-1 at 36; Doc. 50-12 at 6), other evidence supports the finding that despite this official policy, Jim Ross was concerned that Anderson nonetheless was being harsh on Hispanic employees by restricting their use of Spanish and that she had not posted the GISD memorandum that explained Spanish use was limited only where there were safety concerns.  (Doc. 50-4 at 16, 19).

 Plaintiff urges Defendant has failed to carry its burden to prove a business necessity for prohibiting the use of Spanish in the cafeteria where Plaintiff worked.  (Doc. 52 at 28-29).  She points to Ross's deposition testimony in which he could not relate an actual instance of an employee's safety being compromised due to the use of Spanish, and instead offered general examples of communicating about working around high-temperature water, cutting meat or vegetables without gloves, and reminding co-workers to wear safety equipment.  (Doc. 53 at 104).  Plaintiff also cites her own affidavit in which she avers that she never experienced an incident where safety was compromised through the use of Spanish and that Spanish-speaking

was actually beneficial as she could quickly warn her Hispanic colleagues that something was hot or dangerous. *Id*. at 5. Plaintiff further asserts that Anderson prohibited Spanish in the cafeteria without exception, both before and after the language-use memorandum was issued (Doc. 52 at 27; Doc. 53 at 5-10), referencing Anderson's deposition testimony that she "may have" prohibited employees from speaking Spanish in the presence of non-Spanish speaking employees. *Id*. at 177-79, Anderson Deposition.

Defendant correctly notes that the Fifth Circuit has held that "an employer's rule forbidding a bilingual employee to speak anything but English in public areas while on the job is not discrimination based on national origin as applied to a person who is fully capable of speaking English and chooses not to do so in deliberate disregard of his employer's rule." *Garcia v. Gloor*, 618 F.2d 264, 272 (5th Cir. 1980); *see also Garnica v. Zale Lipshy Univ. Hosp.*, 3:03-CV-0637-P, 2004 WL 330675 (N.D. Tex. Feb. 10, 2004); Doc. 38 at 3-4. However, in this case, there is evidence supporting Plaintiff's assertion that she is not completely fluent in English, namely Plaintiff's deposition testimony that she understood about 80 percent of the English she heard (Doc. 50-3 at 7) and, as previously discussed, that she was harassed by Anderson and coworkers due to her lack of English proficiency. Thus, there exists a genuine issue of material fact as to whether Plaintiff was "fully capable of speaking English" and chose not to do so in "deliberate disregard to [her] employer's rule." *Gloor*, 618 F.2d at 272.

Additionally, and more notably, *Gloor* is distinguishable because the Court specifically excluded from its ruling English-only rules that govern an employee's personal time (*Id*. at 268), and it was decided before the EEOC Guidelines on English-only rules were adopted. *Compare EEOC v. Premier Operator Servs*., 113 F. Supp. 2d 1066, 1073 (N.D. Tex. 2000) (Stickney, M.J.) (a "blanket policy or practice prohibiting the speaking of a language other than English on

an employer's premises at all times, except when speaking to a non-English speaking customer, violates Title VII's prohibition against discrimination based on national origin").  As discussed previously, the evidence suggests that although the memorandum articulated safety as a justification for limiting Spanish use, Anderson nevertheless prohibited the use of Spanish in the kitchen at all times.  Thus, there also exists a genuine issue of material fact as to whether Anderson effectively instituted a "blanket policy" prohibiting the use of Spanish, without regard to safety issues.

Based on all the foregoing, Defendant's Motion for Summary Judgment on Plaintiff's hostile work environment claim should be **DENIED**.

3. Disparate Treatment

To establish a prima facie case of discrimination through disparate treatment, a plaintiff must show that she was: "(1) a member of a protected class; (2) qualified for the position; (3) subject to an adverse employment action; and (4) treated differently from others similarly situated." *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 941 (5th Cir.2005) (citations omitted). If the employer succeeds in demonstrating a legitimate, nondiscriminatory reason for its conduct, the plaintiff must show, through substantial evidence, that the employer's justifications are a mere pretext for discrimination.  *Id*.

It is undisputed that Plaintiff is a member of a protected class and was qualified for the position of a food service worker.  (Doc. 50-1 at 29; Doc. 52 at 31).  However, Defendant avers that Plaintiff has not provided evidence of a pre-termination adverse employment action or that she was replaced by someone outside the protected class or treated less favorably than similarly situated employees outside the class.  (Doc. 50-1 at 29).

a. Adverse Employment Action

Plaintiff alleges she suffered adverse employment actions of (1) being placed on unpaid leave; and (2) termination.   (Doc. 38 at 8; Doc. 52 at 32).[2]   The parties do not dispute that Plaintiff's termination was an adverse employment action (Doc 50-1 at 33; Doc. 52 at 31); they do disagree, however, that Defendant was ever placed on unpaid leave.   Defendant contends that Plaintiff leave was unpaid only because she declined to use her personal days in order to be paid for the time she was absent.   (Doc. 50-1 at 30-31 50-3 at 104-05, Garcia Deposition).   Plaintiff offers evidence that GISD placed her on leave from November 12, 2010, to November 22, 2010, which Ross promised would be paid leave, yet in the end insisted that she use her own stored leave or go unpaid.   (Doc. 52 at 32; Doc. 53 at 12, 131, Garcia Aff.).

Under Title VII claims, "[a]dverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007).   Additionally, the denial of paid or unpaid leave constitutes an ultimate employment decision.   *Hockman v. Westward Communications, LLC*, 407 F.3d 317, 331 (5th Cir. 2004) (citing *Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 521-22 (5th Cir. 2001)).

Considering the evidence in the light most favorable to Plaintiff, she initially chose to leave LHS after Anderson gave her an ultimatum to either follow her directions or clock out, and upon complaining to Ross, he told her not to return to work until he instructed.   (Doc. 50-3 at 102, Garcia Deposition; Doc. 50-5 at 21-22, Anderson Deposition; Doc. 53 at 131, Ross Deposition).   While there is conflicting evidence of whether Ross promised to pay Plaintiff for

---

[2] Defendant additionally argues that Plaintiff's complaints of receiving verbal and written reprimands, being transferred and assigned to a different school, receiving a heavier workload and not receiving breaks as did other non-Hispanic workers are not sufficient to constitute an adverse employment action  (Doc. 50-1 at 30-31). However, these arguments are of no moment because Plaintiff only alleges the two aforementioned employment actions.

her time off and actually followed through on such promise (Doc. 50-4 at 48, Ross Deposition;

Doc. 53 at 12, Garcia Aff.), the Court is cannot resolve such factual dispute in the context of a

motion for summary judgment.

     b. <u>Similarly Situated/Replacement by a Non-Class Member</u>

     Defendant additionally contests Plaintiff's claims that she was treated differently than

those similarly situated or that she was replaced by an African American.  (Doc. 50-1 at 33, 35).

Specifically, Defendant maintains that Plaintiff has not provided evidence of a similarly-situated,

non-Hispanic employee who was not terminated for failure to sign an absence form.  Defendant

also contends that "[t]o the extent Plaintiff's duties were absorbed by existing African-American

employees, re-distribution of Plaintiff's job duties is not enough to satisfy Plaintiff's burden for a

prima facie case." *Id*.  Defendant avers that Plaintiff's argument that she was replaced is not

credible because no new workers were hired until months after Plaintiff's termination.  *Id*. at 35-

36.

     Plaintiff insists she has established a prima facie case that she was replaced by someone

outside her protected class, specifically, an African American.  (Doc. 52 at 34).  Plaintiff submits

as proof Defendant's interrogatory response that GISD hired an African American as a food

service worker subsequent to Plaintiff's termination.  (Doc. 53 at 31).  She also points to

Defendant's averment that GISD was under a hiring freeze at the time of Plaintiff's termination

in November 2010, but that once the hiring freeze was lifted, Defendant hired an African

American as a food service worker in March 2011.  *Id*. at 32-33 (citing Doc. 50 at 9).

     Although Defendant suggests that the remote temporal proximity of the African-

American hire and Plaintiff's termination indicate no relation between the two events, such is an

inference more properly drawn by the trier of fact.  Thus, Plaintiff has established a prima facie

case of disparate treatment, causing the burden to shift to Defendant to assert a legitimate, non-discriminatory reason for its actions. *Reeves,* 530 U.S. at 142.

    c. Legitimate, Nondiscriminatory Reason

Defendant avers Plaintiff's refusal to sign the required Absence from Duty form was a legitimate, nondiscriminatory reason for terminating Plaintiff's employment. *Id*. at 38; Doc. 50-3 at 105, Garcia Deposition; Doc. 50-4 at 10, 72-73, Ross Deposition. Jim Ross testified in deposition that signing an Absence from Duty form was required following an employee's absence in order to track attendance and employee payment. (Doc. 50-4 at 10, Ross Deposition). Further, Ross testified that Plaintiff was the only employee to his knowledge that has refused to sign an Absence from Duty form, and after she refused to sign it, he gave orders for her termination. *Id.* at 11, 52, 61. Evidence additionally shows that Plaintiff was told that she was being terminated because she did not sign the Absence from Duty form. (Doc. 50-3 at 105, Garcia Deposition) (Plaintiff testifying that Matt Foreman told her she was being terminated because she did not sign the form). Defendant also submits as evidence Plaintiff's notice of resignation, which states that she was terminated for "insubordination." (Doc. 50-10 at 5).

Plaintiff, however, contends that a reasonable jury could find that her national origin was a motivating factor in her termination and that Defendant's proffered reason for terminating her was merely a pretext for discrimination. (Doc. 52 at 35-37). *See Abarca*, 404 F.3d at 941 (if the employer succeeds in demonstrating a legitimate, nondiscriminatory reason for its conduct, the plaintiff must show, through substantial evidence, that the employer's justifications are a mere pretext for discrimination). In her affidavit, Plaintiff states that Ross's promise to reimburse her for her time off influenced her to refrain from signing the absence of duty form to use her personal days to get paid instead. (Doc. 53 at 12-13). Moreover, Plaintiff claims that GISD did

not strictly require employees to sign the Absence from Duty form, and attaches two past

unsigned forms from her own personnel file.  *Id.* at 46-47.  She also relies on Ross' admission

that it would be easier to transfer Plaintiff, than to discipline Anderson.  *Id.* at 139.

      Under the Title VII burden shifting scheme, Plaintiff has presented substantial evidence

that Defendant's legitimate, non-discriminatory explanations are pretext.  Compelling is the fact

that Defendant's basis for the insubordination charge stems from Plaintiff's refusal, for arguably

legitimate reasons, to sign a form Defendant has not required be signed in the past, and which

Defendant had not previously taken any adverse personnel action on account of her failure to

sign.  That, taken in conjunction with evidence supporting Plaintiff's prima facie case of

discrimination, gives rise to a genuine issue of material fact as to whether Defendant's

justification is creditable or merely pretext for discrimination based on her national origin.  *See*

*Lopez*, 684 F. Supp. 2d at 858.  Accordingly, Defendant's motion for summary judgment on

Plaintiff's disparate treatment discrimination claim should be **DENIED**.

      4. Retaliation

      A claim of retaliation under Title VII is subject to the burden-shifting scheme outlined in

*McDonnell Douglas*.  First, the plaintiff must make a prima facie case that meets three elements:

(1) the employee engaged in an activity that is protected by Title VII; (2) the employer took an

adverse employment action against the employee; and (3) but for plaintiff's protected activity,

the retaliation would not have occurred.  *Brazoria County, Tex. v. EEOC*, 391 F.3d 685, 692 (5th

Cir. 2004), as modified by *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. ___, 133 S.Ct. 2517

(2013).  Under Title VII, a "protected activity" is defined as opposition to any practice rendered

unlawful by Title VII, including making a charge, testifying, assisting, or participating in any

investigation, proceeding or hearing under Title VII.  42 U.S.C. § 2000e-3(a).  The anti-

retaliation provision of Title VII, "unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment," but encompasses retaliatory action which "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64, 68 (2006).

Moreover, in *Nassar*, the Supreme Court held that "Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in § 2000e–2(m)," requiring "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. ___, 133 S. Ct. 2517, 2533 (2013). If a plaintiff fails to prove or raise an issue of material fact that the employer's proffered reason for the adverse employment action is a pretext for retaliation, the defendant is entitled to summary judgment. *Potts v. United Parcel Serv.*, 3:11-CV-2407-L, 2013 WL 4483080, at *9 (N.D. Tex. Aug. 22, 2013) (Lindsay, J.) (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 560 (5th Cir. 2007)). If the plaintiff succeeds in making a prima facie case of retaliation, the burden shifts to the employer to provide a legitimate, non-retaliatory reason for the adverse employment action. *Hockman*, 407 F.3d at 330. And if the employer succeeds in doing so, the plaintiff must show that the employer's reason for its action is merely a pretext for retaliation. *McDonnell Douglas*, 411 U.S. at 804.

Defendant does not contest that Plaintiff engaged in a Title VII protected activity, however, Defendant claims that Plaintiff has not provided evidence for the final two elements of retaliation -- an adverse employment action, and causation between the protective activity and an adverse employment action. (Doc. 50-1 at 50). In support, they re-urge arguments previously addressed herein. Specifically, Defendant argues that because Plaintiff did not suffer from a pre-

termination adverse employment action and her sole adverse employment action that can support a prima facie case is her termination, she cannot establish a prima facie claim of retaliation. *Id*. at 50-51. Additionally, Defendant avers that there is no causal link, let alone but-for causation, between the alleged protected activity and Plaintiff's termination. *Id*. at 51. Rather, Defendant contends that Ross terminated Plaintiff for the legitimate, non-retaliatory reasons of insubordination and refusal to sign the absence form. *Id*. at 52. Defendant concludes that Plaintiff has not provided evidence that Ross's decision to terminate her was based on anything other than the aforementioned reasons. *Id*.

As previously found herein, in addition to her termination, Plaintiff's claims regarding being placed on unpaid leave constitute an adverse employment action. *Hockman*, 407 F.3d at 331. Apparently, there is no disagreement that on November 12, 2010, Plaintiff chose to leave work and subsequently complained to Jim Ross about discrimination and harassment. However, fact questions remain as to whether Plaintiff was promised that her leave of absence would be compensated and whether Ross's directive that Plaintiff should remain at home while her claims were being investigated amounted to placing her on unpaid leave. Drawing reasonable inferences in Plaintiff's favor, however, Ross's alleged action, coming on heels of Plaintiff's complaints of discrimination, and culminating in her termination, is sufficient to raise an issue of material fact as to Plaintiff's retaliation claim. Said a different way, Plaintiff has offered sufficient evidence that but-for her report to Ross of the allegedly discriminatory actions of Ross, Anderson and co-workers, she would not have been placed on unpaid leave and, ultimately, terminated. *See Nassar*, ____, U.S. at ____, 133 S.Ct. at 2533 (but-for standard "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer"). *Compare with Moyer v. Jos. A. Bank Clothiers, Inc.,* 3:11-

CV-3076-L, 2013 WL 4434901, at *14 (N.D. Tex. Aug. 19, 2013) (Lindsay, J.) (finding that a plaintiff's assertion that her manager retaliated against her because she did not share his amorous feelings and because she told him that he had an anger problem was insufficient to show that the plaintiff engaged in a protected activity to establish a prima facie case under *Nassar*).

Defendant references its previous arguments to support its contention that Plaintiff "has no facts that would support a finding of pretext in this case." (Doc. 50-1 at 53). Because the Court has already addressed at length Defendant's previous arguments, it likewise incorporates by reference the reasons stated herein for reaching the opposite conclusion. Plaintiff has presented sufficient evidence to give rise to a genuine issue of material fact as to whether Defendant's proffered reasons for its allegedly adverse employment actions are pretext.

## IV. CONCLUSION

In light of the foregoing, it is recommended that Defendant's Motion for Summary Judgment (Doc. 50) be **DENIED**.

**SO RECOMMENDED** on August 30, 2013.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

23

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

    A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

24